**MANUEL R. and Maria Rosa R., as parents of Carlos R., a handicapped child, Plaintiffs,**

v.

**Gordon M. AMBACH, Commissioner of Education for the State of New York, and the Board of Education of the City of New York, Defendants.**

No. 85 C 2086.

United States District Court,
E.D. New York.

May 29, 1986.

H. Spencer Kupperman, Brooklyn, N.Y., for plaintiffs.

Robert D. Stone (Bernard S. Forman, of counsel), Albany, N.Y., for defendant Gordon M. Ambach.

Frederick A.O. Schwarz, Jr., Corp. Counsel (Norma Kerlin, Robert Ligansky, Asst. Corp. Counsels, of counsel), New York City, for defendant The Bd. of Educ. of the City of N.Y.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiffs, parents of a handicapped child, Carlos, brought this action against defendant Ambach, the New York State Commissioner of Education (the Commissioner) and the New York City Board of Education (the Board) to vacate the Commissioner's decision determining that the proposed placement of Carlos for the year

1983–1984 in a public school was appropriate and denying reimbursement of tuition for that year paid to a private school.

The case is submitted on the record before the Commissioner and under the pertinent provisions of the Education of all Handicapped Children Act (the Act), 20 U.S.C. §§ 1401, 1415 (1982).

Many of the critical facts are undisputed. Carlos, born in 1970, attended public schools through the fourth grade 1979–1980 school year. Before that year his parents had requested the local Committee on the Handicapped (the Committee) to evaluate him. The evaluation showed him to be learning disabled. Thus during the 1979–1980 year he attended the "mainstream" public school and received resource room assistance and language therapy.

For the 1980–1981 year the Committee recommended the same type of placement. His parents challenged this and unilaterally enrolled Carlos in the Churchill School, a private school for the learning disabled. On October 29, 1980 a hearing officer upheld the Committee's recommendation and found the public school placement appropriate for Carlos's needs. The Commissioner dismissed the appeal as untimely.

The Committee made the same kind of recommendation for the 1981–1982 year. The parents again challenged the recommendation, asked for an impartial hearing, and continued Carlos's enrollment in the Churchill School. The hearing officer on August 14, 1981 decided that the recommendation was inappropriate and awarded tuition reimbursement for the first half of the 1981–1982 year. The hearing officer further held that Carlos might continue at the Churchill School at public expense for the balance of the school year unless the Committee furnished by October 1, 1981 a new recommendation based on a proper re-evaluation and classification. Thereafter the parents and the Board stipulated that the Board would pay the Churchill School tuition for the 1981–1982 school year and that the Committee would re-evaluate Carlos and, no later than May 1, 1982,

make a recommendation for an appropriate placement for the year 1982–1983.

Pursuant to the stipulation the Committee then conducted a re-evaluation and recommended on April 29, 1982 a mainstream program in public school with resource room assistance and counseling. The parents challenged the recommendation, sought an impartial hearing, and continued Carlos at the Churchill School. The hearing officer approved the recommendation and denied tuition reimbursement.

The parents appealed to the Commissioner. In a decision dated December 5, 1983 he denied tuition reimbursement for 1982–1983 on the ground that, absent special circumstances, the parents were not entitled to recover tuition during the pendency of the review of the recommended placement. The Commissioner also said that although he denied reimbursement, "I do find that the placement recommended by the COH [Committee] for the 1982–83 school year would have been appropriate only if augmented by a regular program of language therapy." In this court plaintiffs do not attack the denial of reimbursement for that year.

In the meantime in August 1983, some four months prior to this decision of the Commissioner, the Committee recommended for the 1983–1984 year a public school placement similar to that made the previous year. The parents did not request an impartial hearing to contest this recommendation until October 5, 1983, after the school year had begun. They continued to enroll Carlos in the Churchill School.

In December 1983, after the Commissioner handed down his decision dated December 5, 1983, the Committee amended its 1983–1984 recommendation to include speech and language therapy.

The impartial hearing on the recommendation for the 1983–1984 year was held on five dates between March 14, 1984 and June 18, 1984. Briefs were submitted in August 1984.

The impartial hearing officer recited in her decision that it was the Committee's

"latest recommendation which is the subject of this hearing and decision," namely, the recommendation as amended in December 1983 to include speech and language therapy. The impartial hearing officer found the Committee's recommendations "inappropriate" to meet the child's needs and required reimbursement of the Churchill School tuition for 1983–1984, but did not address the question of whether the recommendation was "untimely."

The Board appealed to the Commissioner, who sustained the appeal. The Commissioner said that the Board had adequately demonstrated the appropriateness of the proposed placement and that the record showed no significant reason why he should reach a result different from that reached in his previous decision, namely, that Carlos's needs could be met in a resource room. The Commissioner noted that there was no indication that Carlos had regressed with the passage of time or that the previous testing was no longer sufficient to enable the Committee to recommend an appropriate placement.

The hearing officer deemed the critical issue to be the degree of Carlos's impairment. The Committee took the position that he had "a mild learning disability relative to his superior non-verbal intellectual potential" and therefore recommended a mainstream classroom with resource room remediation and on-site counseling, and additional support in the form of speech and language therapy. The parents and their witnesses viewed Carlos as "severely learning disabled" with "severe language deficits." The evidence showed uncontroverted indications that he had a "superior intellectual potential." Even the Churchill School teacher and psychologist described him as very bright and extraordinarily bright.

Nevertheless the hearing officer found "significant deficits," viewed in the context of "expected learning out-comes of the pupil" and "from the vantage of age-expectancy or grade-level expectancy." She found the recommended program inappropriate to remedy these deficits. She ad-

dressed (1) attention deficits, (2) language deficits, (3) emotional factors, and (4) level of present functioning.

As noted above, the Commission disagreed with the hearing officer's conclusions and annulled her decision.

The criteria for review by this court are set forth in 20 U.S.C. § 1415(e)(2), as interpreted by the Supreme Court in *Board of Educ. v. Rowley*, 458 U.S. 176, 204–08, 102 S.Ct. 3034, 3049–51, 73 L.Ed.2d 690 (1982) and by the Court of Appeals for the Second Circuit in *Adler v. Education Dep't*, 760 F.2d 454, 458 (2d Cir.1985). The section provides, in pertinent part, that the court in reviewing the complaint "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." The *Rowley* opinion said that the provision that the court base its decision on the "preponderance of the evidence" was "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities," 458 U.S. at 206, 102 S.Ct. at 3051, and held that the court's inquiry in suits brought under this section was twofold.

> "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."

458 U.S. at 206–07, 102 S.Ct. at 3051 (footnotes omitted). The Supreme Court went on to state that the courts, in assuring that the requirements of the Act have been met, "must be careful to avoid imposing their view of preferable educational methods upon the States," because the "primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suit-

able to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." 458 U.S. at 207, 102 S.Ct. at 3051.

In *Adler v. Education Dep't, supra,* the Court of Appeals for the Second Circuit said that the standard of review "left in the wake" of the *Rowley* decision "tends to resemble the standard" of review under Article 78 of the New York Civil Practice Act. 760 F.2d at 458.

■ Under these opinions this court is faced with the question not whether in the court's lay opinion the program recommended by the Committee offered the greatest possible benefits to Carlos, or even whether Carlos's program at the Churchill School was preferable to that offered by the Committee, but whether the Committee's program was "reasonably calculated to enable the child to receive educational benefits." Much of the controversy between the parties in this court thus seems irrelevant, addressing itself to whether one program is better than the other.

■ Under 20 U.S.C. § 1412(5)(B) disabled children are to be educated with nondisabled children, and thus there is "a statutory preference for 'mainstreaming,' or the maximum possible integration of handicapped children with nonhandicapped children." *Concerned Parents v. New York City Bd. of Educ.,* 629 F.2d 751, 754 (2d Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981). Moreover, there is substantial evidence in the record in the form of the testimony of Dr. Howard Weiner, the chairperson of the Committee, Cynthia Hyman, the school psychologist, Harriet Ducker, the speech and educational evaluator, and Fred Hendrick, the resource room teacher, to justify the finding that the Committee's program was reasonably calculated to enable Carlos to receive educational benefits. The professionals who evolved the Committee's program believed that he needed a regular classroom environment for most of the day to stimulate his considerable abilities and

that his deficits could be dealt with properly in a resource room giving individual treatment and the related service of speech and language therapy. The Commissioner's decision was thus by no means arbitrary or capricious.

The witnesses for the plaintiffs, of course, disagreed with the Committee's recommended program, one witness going so far as to say that placement in a mainstream school would be a "disaster" because the school was so large and confusing. But the Board's witnesses refuted this, and the court is not satisfied that plaintiffs have met their burden of showing that Carlos would not receive educational benefits under that mainstream program. A careful reading of the record indicates to this court that the experts on both sides simply disagreed as to the teaching methods most suitable to forward Carlos's education. Under the *Rowley* decision this court is not free to prescribe which methods should be followed.

■ Plaintiffs argue that the Committee recommendation dealt with by the hearing officer was not timely because it included the December 1983 amendment referred to above. This point was not ruled upon by the hearing officer, and plaintiffs did not raise it before the Commissioner. They therefore did not preserve it for consideration here.

In any event, although the Committee's initial recommendation was made in August 1983 plaintiffs did not seek an impartial hearing until October 5, 1983, some time after the school year began. Had the point as to timeliness been raised before the Commissioner he could have focussed on whether the values of "mainstreaming" commencing with the beginning of the school year combined with language therapy commencing in December outweighed the values of an education in the Churchill School for the entire year. He could also have considered what impact the lateness of the request for an impartial hearing should have. Since plaintiffs did not avail themselves of the opportunity to press the

matter before the Commissioner, this court should not consider it.

The complaint is denied. So ordered.