**Rita and Joseph LOGSDON, on Behalf of their daughter, Lisa LOGSDON, Plaintiffs,**

v.

**BOARD OF EDUCATION OF the PAVILION CENTRAL SCHOOL DISTRICT, Defendant.**

**No. CIV–90–968E.**

United States District Court, W.D. New York.

June 4, 1991.

Roger G. Nellist, Rochester, N.Y., for plaintiffs.

Paul R. Braunsdorf, Rochester, N.Y., for defendant.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The plaintiffs have brought this action pursuant to the Education of the Handicapped Act ("the Act"), 20 U.S.C. § 1400 *et seq.* They seek a determination from this Court that the so-called "stay put" provision contained in 20 U.S.C. § 1415(e)(3) entitles their child to be enrolled in a regular public kindergarten class pending the completion of administrative appeals of the ini-

tial placement determination by the Pavilion Committee on Special Education ("the CSE").

Lisa is a five-year old handicapped girl suffering from "Down's syndrome." She had anticipated starting kindergarten, in the regular public school class, in September 1990. During the preceding winter, spring and summer, Lisa's mother (Rita) met with school officials and teachers to discuss Lisa's upcoming matriculation. Lisa also was evaluated by psychologists and other specially trained personnel during these months. On August 28, 1990, Lisa's parents were informed by the CSE that the recommended placement for Lisa —*viz.*, her individualized education program ("IEP")—was an "Option II, center-based BOCES" program, including several related services consisting of occupational, physical, speech and language therapies. The plaintiffs opposed such placement, sought review by an impartial hearing officer and initiated this action by seeking a preliminary injunction compelling the defendant to enroll Lisa in the regular kindergarten class pending the hearing officer's decision. This Court denied the preliminary injunction request by Order dated September 26, 1990. Finding that the defendant was not depriving Lisa of an appropriate public education, this Court determined that her placement in the BOCES program, pending the outcome of the hearing, was not irreparably harmful. *See* Order dated September 26, 1990. The hearing officer upheld the recommendation of the CSE January 10, 1991 and the plaintiffs have appealed from this decision to a New York State review officer. Such appeal is pending.

Presently, the defendant moves for summary judgment, asserting that the plaintiffs are not entitled to any of the relief sought herein. Essentially, the defendant asserts that educational placement should be determined by appropriate state officials, as is occurring in this matter, and not by a federal court. Thus, it asserts, at this stage, federal court determination of the appropriate educational placement would be improper. The plaintiffs oppose, asserting that, pursuant to the Act, Lisa is enti-

tled to be placed in the regular kindergarten class pending the outcome of the administrative appeals. *See* 20 U.S.C. § 1415(e)(3).

The Act was passed in 1975 in an effort to ensure that handicapped children are provided "free appropriate public education which emphasizes special education and related services designed to meet their unique needs * * *." 20 U.S.C. § 1400(c). To achieve this goal, the Act sets forth specified procedures to be utilized when school authorities determine and recommend an IEP for a handicapped child. *See* 20 U.S.C. § 1415. If a parent objects to the IEP recommended by a local education agency, a written complaint will entitle such individual to an "impartial due process hearing"—20 U.S.C. § 1415(b)(2)—the outcome of which may be appealed to the state educational agency. 20 U.S.C. § 1415(c). Finally, after the administrative remedies have been exhausted, a dissatisfied party may bring an action in a federal or state court. 20 U.S.C. § 1415(e).

Plaintiffs did not initiate this action upon completion of the administrative appeal procedures. Rather, they sued to compel compliance with the so-called "stay put" or "status quo" provision of subsection 1415(e)(3) which states as follows:

"During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed."

Pursuant to this provision, the plaintiffs sought to have Lisa attend a regular kindergarten pending the outcome of the abovenoted administrative procedures. Because Lisa was "applying for initial admission to a public school," the plaintiffs assert that she should be placed in "the public school program"—*i.e.*, a regular kinder-

garten—until the proceedings shall have been complete.[1]

There exists ample case law interpreting the stay put provision. Most of it involves interpretation of the phrase "then current educational placement." Such litigation has often entailed disputes over the financial reimbursement of parents who place their child in a private institution while awaiting the outcome of the administrative appeals. *See Burlington School Comm. v. Mass. Dep't of Ed.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904 (2d Cir.1982); *Clovis Unified v. Office of Administrative Hearings*, 903 F.2d 635 (9th Cir.1990). In such cases, whether the local school district has recommended a private placement is important in attempting to apply the policies underlying the Act.

Other litigation arising out of interpreting the stay put provision has arisen where a local school board has attempted to dismiss unilaterally a student from the regular public school classroom altogether, thus depriving him or her of any education pending the outcome of a placement decision and/or appeals thereof. *See, e.g., Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988).

■ It is clear to this Court that the purpose underlying subsection 1415(e)(3) is to ensure that handicapped students are not forced to await outside an educational setting the final outcome of a placement determination, whether previously determined or newly sought. The administrative process can take months or years and it is the purpose of the Act to ensure for any child continuity of placement pending such completion.

■ In the present matter, Lisa and her parents participated with the defendant in the process of determining Lisa's appropriate placement—*viz.*, her IEP. Following evaluation of Lisa by trained personnel, the defendant determined that the most appropriate place for Lisa—the place where she would gain the most without excessively burdening the school district—was the BOCES program. Such placement recommendation appears to this Court, on the record before it, to be adequately supported and satisfactorily within the goals and boundaries imposed by the Act. A school district must provide free appropriate public education—it is not compelled to provide the best possible educational environment. *See Leonard by Leonard v. McKenzie*, 869 F.2d 1558, 1561 (D.C.Cir. 1989) (the Act does not mandate an educational program that maximizes the potential of a handicapped child but, rather, one that is sufficient to confer some educational benefit); *see also Manual R. v. Ambach*, 635 F.Supp. 791 (E.D.N.Y.1986). And, while "there is a statutory preference for 'mainstreaming,' or the maximum possible integration of handicapped children with nonhandicapped children"—*id.* at 794 (*quoting from Concerned Parents v. New York City Bd. of Ed.*, 629 F.2d 751, 754 (2d Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981))—, the Act does not compel mainstreaming where, due to the nature of severity of the handicap, such would be inappropriate. *Briggs v. Bd. of Educ.*, 882 F.2d 688, 692 (2d Cir. 1989).

This Court finds that the defendant's recommended placement was properly arrived at and provided an appropriate free public education. Thus, it clearly meets the policy goals of the Act.

The plaintiffs assert that subsection 1415(e)(3) compels the defendant to enroll Lisa in the regular kindergarten classroom pending resolution of the administrative appeals. While the literal language of the subsection could arguably be so construed, this Court cannot find such result to be mandated, especially where, as here, the school board's placement clearly satisfies the goals of the Act. Lisa has not been denied an appropriate public education. *Cf., Honig v. Doe, supra.* Her parents have not been compelled to finance private education as a result of the defendant's

---

1. Because the plaintiffs do not request this Court to review a final administrative determination, failure to exhaust administrative remedies does not deprive this Court of subject matter jurisdiction.

refusal to prove an appropriate education; and this Court finds that providing a public school placement—be it special education or regular kindergarten—satisfies that Congressional goal. *See Zvi D. by Shirley D. v. Ambach, supra,* at 906 fn. 4 (where "a parent's complaint involves an application for initial admission to public school, the child has a right to a public placement during the pendency of the proceeding"). Thus, this Court finds the defendant's recommended placement of Lisa to be appropriate pending the completion of the administrative proceedings. Should either party desire judicial review of the final administrative determination, such action may be brought at the appropriate time.

Accordingly, it is hereby ORDERED that the defendant's motion for summary judgment is granted and that this matter is dismissed without prejudice to a later review following the final administrative determination.