**HAMPTON SCHOOL DISTRICT,**
Plaintiff, Appellee,

v.

**Charles DOBROWOLSKI, et al.,**
Defendants, Appellants.

No. 91–2273.

United States Court of Appeals,
First Circuit.

Heard June 5, 1992.

Decided Sept. 23, 1992.

Louis W. Helmuth with whom Van Buiten, Helmuth, Lobe & Rees, Burlington, Vt., was on brief, for defendants, appellants.

Gerald M. Zelin with whom Diane M. Gorrow and Soule, Leslie, Zelin, Sayward and Loughman, Salem, N.H., were on brief, for plaintiff, appellee.

Before CYR, Circuit Judge, RONEY,* Senior Circuit Judge, and PIERAS,** District Judge.

RONEY, Senior Circuit Judge:

The parents of a child with learning disabilities who is entitled to individualized education in the public schools sought reimbursement for the cost of a private school for a two year period during which the parents removed their child from the public school system, believing that the education-

---

* Of the Eleventh Circuit, sitting by designation.

** Of the District of Puerto Rico, sitting by designation.

nation.

al program offered by the school district during that period was inappropriate. An administrative hearing officer ruled for the parents. Finding that the program offered by the school district for those years was a free appropriate public education as envisioned by the relevant statute, the district court reversed the administrative decision. We affirm.

In light of the evidentiary support for the district court's factual findings concerning the appropriateness of the educational program offered by the school, we cannot say the court committed clear error. In addition, although the parents may not have waived their claims of procedural violations, the shortcomings they allege do not entitle them to relief.

The Individuals with Disabilities Education Act (the Act), 20 U.S.C. § 1400 *et seq.*, requires that to qualify for federal financial assistance, participating states must adopt policies assuring all students with disabilities the right to a "free appropriate public education." 20 U.S.C. § 1412(1). The state must assure that, to the maximum extent appropriate, this education will be provided in the least restrictive environment with children who are not disabled. 20 U.S.C. § 1412(5)(B). The Act requires the state to establish and maintain certain procedures "to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a).

Schools are required to develop an individualized education program (IEP) for each child with a disability. An IEP is a program of instruction and related services that has been specially designed to meet the unique needs of the child. The IEP document contains information concerning the child's present levels of performance; a statement of annual goals and short term instructional objectives; a statement of the specific educational services to be provided, and the extent to which this can be done in the regular educational programs; and objective criteria for measuring the student's progress.

■ The IEP is developed by a team including a qualified representative of the local educational agency, the teacher, the parents or guardian, and, where appropriate, the student. 20 U.S.C. § 1401(a)(20). Thereafter, the IEP must be reviewed at least annually and revised when necessary. 20 U.S.C. § 1414(a)(5). Parents who disagree with a proposed IEP are entitled to an impartial due process hearing. 20 U.S.C. § 1415(b)(2). Any party aggrieved by the decision of the administrative hearing officer can appeal to either state or federal court. 20 U.S.C. § 1415(e). An IEP is appropriate under the Act if it provides instruction and support services which are reasonably calculated to confer educational benefits to the student. *Board of Educ. v. Rowley,* 458 U.S. 176, 200–07, 102 S.Ct. 3034, 3047–51, 73 L.Ed.2d 690 (1982); *Abrahamson v. Hershman,* 701 F.2d 223, 226–27 (1st Cir.1983).

Michael Dobrowolski, the son of Frances and Charles Dobrowolski, was born on November 12, 1974. While Michael was in second grade in Derry, New Hampshire, he was found to have certain learning disabilities. Derry Cooperative School District furnished IEPs for the 1983–84 and 1984–85 school years, when Michael was in the third and fourth grades. Both of these IEPs were accepted by the Dobrowolskis. Derry had proposed a more intensive IEP for the fifth grade which was not implemented because the family left the district and moved to Hampton, New Hampshire.

The Hampton School District received from the Derry School District Michael's report cards and the proposed fifth grade IEP. In addition, representatives of Hampton met with Mrs. Dobrowolski prior to the beginning of the 1985–86 school year and knew that Michael was a special education student. At the start of that term, however, Hampton had not yet offered an IEP. As a result, Michael started the fifth grade in mainstream classes with no special educational program. Several weeks later, on October 17, 1985, an IEP was developed for Michael. That plan placed Michael in mainstream classes for all subjects, and made

the resource room available for up to three hours per week, as needed.

Michael did not make much use of the resource room the first semester. His grades plummeted in the ensuing semesters. As his grades fell, Michael's time in the resource room was increased, reaching four hours per week by March 1986.

During the summer of 1986, the Dobrowolskis enrolled Michael at the Learning Skills Academy, a private special education day school, where he was tutored in math, social communication, peer relation skills, and reading. Michael apparently made significant progress there, and it appears that this contrast to his performance at Hampton led the Dobrowolskis to question the wisdom of Michael's continued enrollment in the public school.

In August 1986, Mrs. Dobrowolski was told by Mrs. Lee Cooper, Hampton's director of special education, that Michael's IEP for sixth grade could be the same as that for the fifth grade, since federal law does not require more than an annual review of an IEP, and the fifth grade IEP had been modified in March 1986. Mrs. Cooper also told Mrs. Dobrowolski that the district nonetheless would review Michael's IEP during the first week of school. On September 2, however, Mrs. Dobrowolski informed Hampton that she unilaterally had decided to enroll Michael at Learning Skills Academy.

Meetings were held on September 4, 1986, and September 11, 1986. The IEP developed as a result of these meetings provided for another increase in resource room time. It also provided for modifications in Michael's mainstream academic classes. The modifications included preferential seating, teacher cues to Michael to pay attention, guidance to assist him in time management, and short term goals with frequent checkups.

The Dobrowolskis disagreed with this IEP, as well as the revisions presented at meetings in October, November, and December of 1986. The Dobrowolskis requested a due process hearing in January 1987. That request was later withdrawn without prejudice. The Dobrowolskis re-filed their request in September 1987, contesting both the 1986–87 IEP and the IEP that had been prepared for the 1987–88 school year. Michael remained at the Learning Skills Academy during the sixth and seventh grades. The parents sought reimbursement for the cost of tuition at and transportation to the private school. Their challenge was based on claims of both substantive and procedural violations of the Act.

A due process hearing was held before a State of New Hampshire hearing officer in February and March of 1988. The hearing officer found that the IEPs Hampton offered for the 1986–87 and 1987–88 school years were inappropriate. Finding the program provided at the Learning Skills Academy appropriate, the hearing officer ordered Hampton to reimburse the Dobrowolskis for their expenses. The hearing officer did not address the Dobrowolskis' claims of procedural violations. Hampton appealed the administrative decision to the United States District Court for the District of New Hampshire. After a short bench trial, the district court overturned the hearing officer's decision and entered judgment for Hampton.

The district court found that the September 1986 IEP contrasted sharply with the one developed in October 1985 and modified in March 1986, and that the individualized instruction offered by this IEP "likely would have yielded more positive academic results than did the previous IEPs." The district court further found that the IEP proposed for 1987–88 was substantially similar to the 1986–87 IEP. The court acknowledged that due weight must be accorded the decision of the hearing officer, but found that reversal of the administrative decision was warranted because the preponderance of the evidence indicated that the IEPs for the 1986–87 and 1987–88 school years offered programs reasonably calculated to yield educational benefits in the least restrictive environment.

### Trial–Level Review

The Act provides that, in reviewing the decision of a state hearing officer, the dis-

trict court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). The role of the district court is to render "bounded, independent decisions—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court." *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 791 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). "While the court must recognize the expertise of an administrative agency, as well as that of school officials, and consider carefully administrative findings, the precise degree of deference due such findings is ultimately 'left to the discretion of the trial court.'" *G.D. v. Westmoreland Sch. Dist.*, 930 F.2d 942, 946 (1st Cir.1991) (quoting *Burlington*, 736 F.2d at 792).

■ In reviewing the administrative determination under the Act, a district court is required to address two questions aimed at the school's compliance with the procedural and substantive requirements of the Act:

First, has the State complied with the procedures set forth in the Act?

Second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?

*Board of Educ. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982).

The court below declined to address the first question, stating that the Dobrowolskis had "provided no examples or proof of any [procedural] violations." Addressing the second prong of the test, the district court concluded that the preponderance of the evidence showed that the IEPs offered for the 1986–87 and 1987–88 school years were appropriate, and reversed the decision of the administrative officer.

### Appellate Review

■ The district court's determination of whether an IEP was appropriate is a mixed question of law and fact. "[I]n the absence of a mistake of law, the court of appeals should accept a district court's resolution of questions anent adequacy and appropriateness of an IEP so long as the court's conclusions are not clearly erroneous on the record as a whole." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 990–91 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). If the trial court's findings were based on a mistake of law, however, the reviewing court is not bound by the "clearly erroneous" standard. *LoVuolo v. Gunning*, 925 F.2d 22, 25 (1st Cir.1991).

### District Court's Factual Findings

■ The district court committed no mistake of law in its assessment of the appropriateness of the proposed IEPs. The court properly articulated the governing legal issue as whether the IEPs "guarantee some 'reasonable probability of educational benefit with sufficient supportive services at public expense' ... in the least restrictive environment." The program at the Learning Skills Academy may have provided Michael with a better education than that offered by the public school. As long as the IEPs proposed by Hampton met the minimum federal standard of appropriateness, however, the Act does not require school districts to reimburse parents who choose a superior placement for their child. *G.D. v. Westmoreland Sch. Dist.*, 930 F.2d 942, 948–49 (1st Cir.1991). Our task, therefore, is to determine whether the district court committed clear error in concluding that the IEPs Hampton offered were appropriate.

■ The Dobrowolskis assert that the district court's judgment is invalid due to certain erroneous findings of fact. Our focus is on whether the evidence supports the district court's conclusion that Hampton's IEPs for the 1986–87 and 1987–88 school years were reasonably calculated to confer educational benefits in the least restrictive environment. If the district

court's ultimate conclusion regarding the appropriateness of the IEPs is not clearly erroneous, we will not reverse that judgment even if there were technical errors that do not affect the substantial rights of the parties. *See Sugarman v. Sugarman,* 797 F.2d 3, 9 (1st Cir.1986); 28 U.S.C. § 2111. " 'Where the conclusions of the [trier] depend on its election among conflicting facts or its choice of which competing inferences to draw from undisputed basic facts, appellate courts should defer to such fact-intensive findings, absent clear error.' " *Reliance Steel Products v. National Fire Ins. Co.,* 880 F.2d 575, 576 (1st Cir.1989) (quoting *Irons v. Federal Bureau of Investigation,* 811 F.2d 681, 684 (1st Cir.1987)). Thus, the specific factual findings of the district court are to be set aside only if, upon review of the entire record, we are left with the definite and firm conviction that a mistake has been committed.

■ Our review of the record as a whole indicates that the district court did not commit clear error. The following evidence presented to the district court supports its conclusion that the IEPs Hampton offered for the 1986–87 and 1987–88 school years were appropriate:

First, there was evidence of Michael's progress at Hampton during the first quarter of fifth grade. This was achieved with minimal resource room support and minimal classroom modifications.

Second, there was evidence that Michael's problems during the remainder of fifth grade centered around inattention, lack of motivation, and failure to complete homework assignments.

Third, the IEPs Hampton offered for the sixth and seventh grades offered more services than the IEPs which governed during the fifth grade, and addressed the attention, motivation, and homework issues.

Fourth, school district witnesses testified that children with disabilities similar to or more severe than Michael's have made educational progress at Hampton in programs similar to the programs offered to Michael in the 1986–87 and 1987–88 IEPs.

Fifth, that testimony was corroborated by professional literature indicating that children with mild to moderate learning disabilities generally make as much educational and emotional progress in mainstream or mainstream/resource room programs, with adequate support, as in full time segregated classes or private schools devoted to children with disabilities.

Finally, evidence was introduced to show that the IEPs which Hampton offered Michael for the 1986–87 and 1987–88 school years reflected an established method for controlling an attention deficit disorder without medication.

In light of the foregoing evidence, we cannot say that the district court committed clear error in concluding that the IEPs Hampton offered were appropriate. The specific factual findings to which the Dobrowolskis attempt to assign error either were not clearly erroneous or were not integral to the court's ultimate conclusion regarding the appropriateness of the IEPs. There was sufficient additional evidence before the district court to support its ultimate finding regarding the appropriateness of the IEPs.

### Procedural Compliance

■ The Dobrowolskis assign error to the district court's refusal to address their assertion that Hampton failed to comply with the procedural requirements of the Act. The district court disposed of the Dobrowolskis' allegations of procedural violations as follows:

> Defendants allege that Hampton failed to follow procedures required by the Act. However, defendants have provided no examples or proof of any such violations and the court will not *sua sponte* search the record for procedural errors. Hence, this argument will not be addressed.

Claims of procedural errors not presented to the administrative hearing officer are not preserved for judicial review by the trial court. *David D. v. Dartmouth Sch. Comm.,* 775 F.2d 411, 424 (1st Cir.1985), cert. den., 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986). Claims not articulated to the district court cannot be raised on

appeal, even if they had been pressed before the hearing officer. *G.D. v. Westmoreland Sch. Dist.*, 930 F.2d 942, 950 (1st Cir.1991).

We doubt the correctness of the district court's refusal to review the Dobrowolskis' procedural claims on the ground they were not specific enough in raising these claims. It is true that the Dobrowolskis did not stress their claim of procedural noncompliance to the district court, and that their trial brief did not provide any specific examples of procedural violations, but the pleadings before the district court contained more than the "barest inference" of their claim. *See Wallace Motor Sales v. American Motors Sales Corp.*, 780 F.2d 1049, 1067 (1st Cir.1985). In their Memorandum of Fact and Law in support of Motion for Summary Judgment, the Dobrowolskis enumerated several specific examples of procedural noncompliance, discussed the law supporting their claims, and cited to specific evidence in the record and to the hearing officer's decision. Their trial brief directed the court's attention to pleadings in the administrative record which recited their contentions of procedural noncompliance in detail. Their attorney raised the issue of procedural violations at the hearing before the trial court judge.

■ Therefore, we have reviewed the Dobrowolskis' claims of procedural violations but have determined that even if the claims were not waived, the district court's failure to address the issues is not grounds for reversal. The procedural flaws alleged by the Dobrowolskis did not render the challenged IEPs invalid. An IEP will be set aside for procedural violations only if there is "some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits." *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991). A number of the Dobrowolskis' claims refer to actions of Hampton that occurred well before the 1986–87 and 1987–88 school years, such as their mishandling of Michael's records and their failure to provide needed services in the fall of 1985. Because these alleged procedural violations occurred outside of the relevant time frame, they cannot provide the basis for setting aside the IEPs at issue.

■ Those flaws argued by the Dobrowolskis that do address the 1986–87 and 1987–88 IEPs also fail to provide grounds for reversal. Although the IEPs may have been written by a single member of Michael's IEP team, the record indicates that they were developed through a team effort which included input from Michael's parents and former teachers. It is permissible for one person to draft the IEP as long as the parents are not denied the opportunity to participate, and the members of the IEP team have an opportunity to discuss and amend the IEP. *Roland M.*, 910 F.2d at 994; *see also* 34 C.F.R. Part 300 App.C, § 55.

■ The Dobrowolskis' also argue that reversal is warranted because Hampton had determined Michael's placement before developing his IEP, in violation of regulations promulgated under the Act which require a student's placement to be "based on" the IEP. 34 C.F.R. § 300.552(a)(2). This argument must fail because the procedural inadequacy alleged did not result in a deprivation of Michael's right to an appropriate education or of the parents' right to participate in the IEP process. In summary, any error committed by the district court in refusing to address the Dobrowolskis' claims of procedural violations was harmless.

### Burden of Proof

■ The burden of proof at trial was on the school district as the party challenging the hearing officer's decision. *See Roland M.*, 910 F.2d at 991. The district court specifically stated that it was placing the burden on the school district. We reject the Dobrowolskis' contention that the district court actually did something other than that which it said it was doing.

Admission of Deposition Transcripts

■ Although the Dobrowolskis arguably are correct in contending that the district court committed error when it admitted into evidence the discovery depositions of Dr. Clara Maslow and Dr. George Storm, we need not decide the point because the trial court ultimately disregarded this evidence. In its trial brief, Hampton relied on the trial deposition transcripts to criticize the reports of Maslow and Storm, the Dobrowolskis' experts, which had been admitted in the administrative hearing. The district court responded to those arguments in a footnote which reads:

> The School District has criticized the Storm and Maslow reports and claims their evaluations were faulty. The court finds these criticisms immaterial given the relatively little weight assigned to [the reports] by the hearing officer. Furthermore, even assuming the complete accuracy of those reports, the court finds the IEPs offered by Hampton were appropriate.

This is the only reference the court made to the deposition transcripts. It is clear from the court's statement that the deposition transcripts were unnecessary to the court's determination concerning the appropriateness of the IEPs. Any error committed in the admission of the transcripts was harmless. *See Puerto Rico Ports Auth. v. M/V Manhattan Prince*, 897 F.2d 1, 8 (1st Cir. 1990) (finding error harmless based on footnote in district court's decision stating that trial court had ignored erroneously admitted report).

Having considered all of the arguments made by the appellants, we have determined that the district court did not commit reversible error.

*Affirmed.*