# United States Court of Appeals
## For the First Circuit

No. 02-1005

SUSAN RAFFERTY, individually and as parent
and natural guardian of EMILY RAFFERTY, a minor,
Plaintiff, Appellant,

v.

CRANSTON PUBLIC SCHOOL COMMITTEE; ROBERT MATTIS,
individually and in his official capacity as
Special Education Director; JOSEPH HERBOLD, individually
and in his official capacity as Director of Guidance; and
PETER MCWALTERS, individually and in his official capacity
as Commissioner of the Rhode Island Department of Education,
Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. Mary M. Lisi, U.S. District Judge]

---

Before
Torruella, Circuit Judge,
B. Fletcher,[*] Senior Circuit Judge,
Stahl, Senior Circuit Judge.

---

Melissa F. Weber, for appellant.
Gregory P. Piccirilli, with whom Sciacca & Piccirilli, was on brief, for appellees Cranston Public School Committee, Robert Mattis and Joseph Herbold.
Anne T. Turilli, Special Assistant Attorney General, R.I. Department of Attorney General, with whom Sheldon Whitehouse, Attorney General, were on brief, for appellee Peter McWalters.

---

December 24, 2002

---

[*] Hon. Betty B. Fletcher, of the Ninth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.    Plaintiff-appellant, Susan Rafferty ("Rafferty"), brings this appeal on behalf of herself and her child, Emily Rafferty ("Emily").  Rafferty appeals the district court's summary judgment order in favor of defendants-appellees, the Cranston Public School Committee; Robert Mattis, the Special Education Director; Joseph Herbold, the Director of Guidance; and Peter McWalters, the Commissioner of the Rhode Island Department of Education, as to her claims that defendants violated the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400 et seq., and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1]  In addition, Rafferty appeals the district court's order granting McWalter's motion for judgment on the pleadings as to her procedural due process claims under 42 U.S.C. § 1983.  For the reasons stated below, we affirm.

### I.  Background

On May 19, 1994, at the end of Emily's second grade year, the Cranston Public Schools (the "District") evaluated her reading ability and identified her as a disabled child in need of special education services under IDEA.  As required by IDEA, District personnel created an Individualized Education Program ("IEP") for Emily, which recommended that she remain in a mainstream classroom with non-disabled students and receive approximately three hours a

---

[1]  Except for one § 1983 claim filed against McWalters solely in his official capacity, Rafferty brings suit against the defendants in their individual and official capacities.

week of additional reading assistance.  See 20 U.S.C. § 1414(d)(1)(A).

Following her fifth grade year, Emily's IEP stated that she read at a third grade level, but it failed to include a statement of Emily's present education level, as required by IDEA. 20 U.S.C. § 1414(d)(1)(A)(i).  At the end of Emily's sixth grade year, her IEP failed to indicate her specific reading level or include a statement of annual goals.  Id. § 1414(d)(1)(A)(i)-(11). Throughout her years in the District, Emily had poor attendance, and in the seventh grade, the middle school principal asked Rafferty to provide the school with a letter from Emily's doctor explaining her absences.  The letter stated that Emily's absences were due to a significant family disruption.  Apparently, the Raffertys were having marital difficulties, and Rafferty had been diagnosed with cancer.  Emily's school agreed to provide her with tutoring to help her transition back to school following her numerous absences.  From approximately the middle of March until June of 1999, Emily attended tutoring provided by her school.  On June 10, 1999, the school held an IEP meeting to discuss Emily's upcoming school year.  Emily's father attended the meeting alone and signed the IEP.

During the summer of 1999, Emily vacationed at her aunt's house in Kentucky.  In June of 1999, Rafferty completed a parent questionnaire for the Langsford Reading Center ("Langsford") in

Kentucky, and Langsford personnel evaluated Emily on July 15, 1999. Four days before classes began at the District, Rafferty informed the District that Emily would be attending Langsford. From September to December of 1999, Emily received reading tutoring at Langsford. Following her attendance at the reading center, Emily matriculated at St. Francis, a private school in Kentucky.

On November 19, 1999, while Emily was still in Kentucky, Rafferty requested an IEP meeting. The District denied the request, stating that Emily was no longer enrolled in the District. Then, in January of 2000, Rafferty requested a due process hearing under IDEA, claiming that the District failed to give her notice of an IEP meeting held on May 27, 1999. After Rafferty made the hearing request, the District initiated a residency hearing. Although she admitted to living in Massachusetts with her mother while recuperating from brain cancer, she argued that their residence had never changed. A decision by McWalters, the Commissioner of the Rhode Island Department of Education, stayed a ruling on residency until the local level IDEA hearing officer made a finding regarding whether Cranston had provided Emily with a Free Appropriate Public Education ("FAPE"). McWalters reasoned that although there was evidence supporting the District's argument that Emily was sent to Kentucky because Rafferty was ill and unable to care for her, Rafferty should be given the opportunity to argue that she sent Emily to Kentucky because the District had failed to

provide a FAPE, a showing that potentially could entitle Rafferty to reimbursement for the private school tuition.

The hearing officer determined that Emily's 1998 and 1999 IEPs were inadequate and inappropriate. Crucially though, the hearing officer also determined that Langsford was an inappropriate placement because it was a reading clinic rather than a school. Consequently, he denied private school reimbursement and only awarded Rafferty attorney fees. Both parties appealed the hearing officer's decision to a Department of Education review officer. The review officer upheld the finding that the District did not err when it refused to give Rafferty an IEP meeting after November 19, 1999 because Emily was living in Kentucky. In addition, the officer upheld the denial of tuition reimbursement because Rafferty did not notify the school at least 10 days prior to removing Emily from school, and Langsford did not constitute the least restrictive environment to which Rafferty could have sent Emily. Finally, the review officer reversed the hearing officer's decision to award attorney fees to plaintiff's counsel.

Rafferty then filed a complaint in the United States District Court for the District of Rhode Island. She claimed that the defendants violated her and Emily's rights under IDEA and engaged in prohibited retaliation against her because she requested a due process hearing. The district court adopted the detailed report and recommendation of the magistrate judge, granting

defendants' motion for judgment on the pleadings with respect to the § 1983 claim against McWalters and granting summary judgment in favor of defendants as to all other claims.

## II. Standard of Review

We review grants of summary judgment and dismissals on the pleadings de novo. Rose v. Yeaw, 214 F.3d 206, 209 (1st Cir. 2000); United States v. U.S. Currency, $81,000.00, 189 F.3d 28, 33 (1st Cir. 1999). Although we need not defer to the district court, we still must give "due weight" to the administrative record by using an intermediate standard of review. Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). This standard "requires a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete de novo review." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993). "While the court must recognize the expertise of an administrative agency, as well as that of school officials, and consider carefully administrative findings, the precise degree of deference due such a finding is ultimately 'left to the discretion of the [examining] court.'" G.D. v. Westmoreland Sch. Dist., 930 F.2d 942, 946 (1st Cir. 1991) (citation omitted).

## III. Waiver of Claims Not Raised at Due Process Hearing

Rafferty argues that the district court should have considered her claims that the District failed to provide adequate notice of procedural safeguards, as required by 20 U.S.C. § 1415

(d), and that the District denied Rafferty access to records.[2] However, she did not raise these issues at her due process hearing.

IDEA gives the parent of a disabled child the right to an impartial due process hearing conducted by the local educational authority, if she is dissatisfied with "any matter relating to the identification, evaluation, or educational placement of [her] child" or feels her child is not receiving a FAPE.  20 U.S.C. § 1415(b)(6), (f)(1).  Any aggrieved party can appeal the findings and decision of the hearing officer to the state educational agency.  Id. § 1415(g).  If the parent remains dissatisfied, she can bring a civil action in federal district court.  Id. § 1415(i)(2).

IDEA requires that a plaintiff raise or exhaust claims concerning a disabled child's "educational situation" in the due process hearing.  Weber v. Cranston Sch. Comm., 212 F.3d 41, 49 (1st Cir. 2000).  Plaintiff can circumvent the exhaustion requirement if she "can show that the agency's adoption of an unlawful general policy or practice would make resort to the agency futile, or that the administrative remedies afforded by subchapter II of IDEA are inadequate given the relief sought."  Id. at 52.

---

[2]  There may be a third claim that Rafferty attempted to bring for the first time in federal court involving the hearing officer's failure to provide a remedy.  We are unable to decipher the nature of this claim, and "[w]e refuse to construct [this] argument[] for her."  Weber v. Cranston Sch. Comm., 212 F.3d 41, 53 (1st Cir. 2000).

Rafferty cannot meet any of the exceptions to the exhaustion requirement. She has not pointed to any evidence indicating that the agency adopted an unlawful general policy or practice. Rafferty refers to records held by the District that were not turned over to her until a month after her request, but this does not constitute a charge of an unlawful general policy or practice by the agency. Further, she cannot show that resort to the hearing was futile because the hearing officer could not have awarded the redress sought. Rafferty's argument on this point is unclear, but she may be claiming that exhaustion was futile because she could not recover monetary damages at the administrative hearing. Recently this Circuit, however, has held that "plaintiffs who bring an IDEA-based claim under 42 U.S.C. § 1983, in which they seek only money damages, must exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 64 (1st Cir. 2002). Consequently, we hold that Rafferty must comply with the exhaustion requirement, and she is barred from bringing the additional claims she first raised in district court.

## IV. Reimbursement Denial

The hearing officer rejected Rafferty's claim for private school reimbursement because Langsford was not an appropriate placement and because Rafferty did not provide the District with notice of her intention to place Emily in private school. After

examining the record, we find that the preponderance of the evidence supports the hearing officer's denial of private school reimbursement.

## A. Not an Appropriate Placement Under IDEA

Where the court or hearing officer finds that the school district did not make a FAPE available to the child in a timely manner, IDEA allows parents to place their disabled child in a private school and receive reimbursement.[3] While reimbursement is not barred because the private school fails to meet the standards of the state educational agency, parents "are entitled to reimbursement only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 13-15 (1993). "Reimbursement is a matter of equitable relief, committed to the sound discretion of the district court . . . usually reserved for parties who prevail

---

[3]  IDEA provides:

> (ii) Reimbursement for private school placement. If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C).

at the end of the placement dispute."  Roland M. v. Concord Sch. Comm., 910 F.2d 983, 999 (1st Cir. 1990) (citations omitted).  As the Supreme Court has stated, "parents who unilaterally change their child's placement . . . without the consent of state or local school officials, do so at their own financial risk."  Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 373-74 (1985).

It is unnecessary to consider whether the District was providing Emily with a FAPE because Langsford was not an appropriate placement.  While at Langsford, Emily spent four to five hours a day, five days a week alone with a clinician working on reading.  Although the tutoring did improve her reading ability, she did not study any other subjects, such as social studies, math, English, or science.  "'Mainstreaming may not be ignored, even to fulfill substantive educational criteria.'"  Rome Sch. Comm. v. Mrs. B., 247 F.3d 29, 33 (1st Cir. 2001) (quoting Roland M., 910 F.2d at 992-93).  Even if the child makes academic progress at the private school, "that fact does not establish that such a placement comprises the requisite adequate and appropriate education."  Id. (internal quotation marks omitted).  Therefore, we reject Rafferty's argument -- that a parent can seek any alternative school she wishes if the public school education is inadequate. See  Florence County, 510 U.S. at 11 (stating that a private school placement must be "reasonably calculated to enable the child to receive educational benefits") (citation omitted)).  The hearing

officer's determination that the reading clinic was not an appropriate placement was amply supported by evidence that Emily was not in a mainstream classroom and did not receive instruction in major subject areas.

## B. Ten Day Notice Requirement

IDEA requires that at least ten business days prior to the removal of the child from public school, a parent provide written notice that she is rejecting the placement proposed in the IEP and enrolling the child in private school at public expense. 20 U.S.C. § 1412(a)(10)(C)(iii). Rafferty claims that she missed the deadline because she was ill with cancer.[4] The hearing officer rejected this argument because it does not fit under the exceptions to IDEA's notice requirements, and because at the time Rafferty says she was too ill to give notice to the District, she completed a detailed application for Langsford.[5] While the ability of

---

[4] Rafferty makes a related claim that the district court erred when it denied Rafferty private school reimbursement while excusing the defendants from other procedural violations because it "undercuts fundamental Constitutional principles of fairness." It appears that Rafferty is referring to McWalter's grant of an extension to the hearing officer to render his decision. A review of the record does not reveal that this statutorily-sanctioned extension caused Rafferty any harm. 34 C.F.R. § 300.511(c); see Amann v. Stow Sch. Sys., 982 F.2d 644, 653 (1st Cir. 1992) (rejecting a procedural challenge to a tardily issued opinion because the delay did not cause harm).

[5] IDEA does not require parents to meet the notice requirement, if one of the following exceptions applies:

    (I) the parent is illiterate and cannot write in English;
    (II) compliance with clause (iii)(I) would likely result

Rafferty to comply with the notice requirement is disputable, we will not upset the hearing officer's finding because it is supported by sufficient evidence. While there is evidence on the record that Rafferty could take care of her affairs, such as Rafferty's completion of the Langsford questionnaire, there is insufficient countervailing evidence that her illness left her unable to inform the District that she was removing Emily from the District and placing her in private school because the District had not provided a FAPE. Accordingly, we conclude that the hearing officer did not err when he denied Rafferty tuition reimbursement.

## V. Retaliation Claim

Rafferty claims that the District retaliated against her in violation of section 504 of the Rehabilitation Act when it convened a residency hearing following her request for a due process hearing.[6] We find that the preponderance of the evidence

---

    in physical or serious emotional harm to the child;
    (III) the school prevented the parent from providing such notice; or
    (IV) the parents had not received notice, pursuant to section 1415 of this title, of the notice requirement in clause (iii)(I).

20 U.S.C. § 1412 (a)(10)(c)(iv).

[6]  Section 504 of the Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined by 706(20) of this title, shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance . . . . 29 U.S.C. § 794(a). Congress amended the Rehabilitation Act to incorporate the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964."

supports the hearing officer's finding that the District did not convene the residency hearing in retaliation. The District had an obvious, non-retaliatory reason to initiate the residency hearing: they had several indications that Rafferty and Emily were no longer living in the state. In the due process hearing, Rafferty claimed that the District was required to provide her with an IEP meeting. However, she would only have been entitled to a meeting if Emily was a resident of Cranston, Rhode Island.

At the time Rafferty sought a due process hearing, school personnel were aware that Rafferty was living in Massachusetts and Emily was living with relatives in Kentucky, providing the District with substantial reason to question Emily's residency. The evidence heavily favors the hearing officer's finding that the District did not convene a residency hearing in retaliation for the due process hearing, and Rafferty does not offer any support for a contrary interpretation of the facts. Consequently, we affirm dismissal of Rafferty's retaliation claims.

## VI. Section 1983 Claim

Rafferty appeals the district court's Rule 12(c) dismissal of her § 1983 claim against McWalters. She pursues her

---

34 C.F.R. section 104.61 (1999); Weber, 212 F.3d at 48 (citation omitted). The pertinent regulation provides that "[n]o recipient or other person shall intimidate, threaten, coerce, or discriminate against individual . . . because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part." 34 C.F.R. 100.7(e) (1999).

claim against McWalters in his official capacity as Commissioner of the Rhode Island Department of Education and seeks only money damages.  As we have said before, "it is well settled that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action."  Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 700 (1st Cir. 1995) (citation omitted).  Consequently, we affirm the dismissal of Rafferty's claim against McWalters.

## VII.  Conclusion

For the foregoing reasons, we affirm the judgment of the district court granting summary judgment as to all defendants and granting judgment on the pleadings with respect to plaintiff's § 1983 claim against McWalters.  No costs awarded.

**Affirmed**.