[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT


No. 97-1506

MILFORD SCHOOL DISTRICT,

Plaintiff, Appellee,

v.

WILLIAM F., ETC., AND CLAIRE F., ET AL.,

Defendants, Appellants.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. James R. Muirhead, U.S. Magistrate Judge] 



Before

Torruella, Chief Judge, 

Lynch, Circuit Judge, 

and Keeton,* District Judge.  



Linda A. Theroux for appellants. 
Diane M. Gorrow, with whom Soule, Leslie, Kidder, Zelin, 
Sayward & Loughman was on brief, for appellee. 



November 10, 1997


 

* Of the District of Massachusetts, sitting by designation.

KEETON, District Judge. This case arises under the KEETON, District Judge. 

Individuals with Disabilities Education Act (IDEA), 20 U.S.C.

1400-1420, New Hampshire's implementing legislation, N.H. Rev.

Stat. Ann. 186-C, federal regulations, 34 C.F.R. pt. 300, and

state regulations, N.H. Code Admin. R. Ed. 1101-1137. Appellants

seek full reimbursement from appellee for the costs incurred in

placing their educationally disabled daughter at a private

college preparatory school, the Dublin School, for the 1995-96

school year. Appellants argue that their daughter did not

receive either an appropriate educational placement or an

appropriate Individualized Education Plan (IEP) as required by

the IDEA framework. Throughout this litigation, appellants have

sought full reimbursement of the costs they incurred for the

1995-96 school year, arguing that their claim is supported by

Burlington v. Department of Educ., 736 F.2d 773, 792 (1st Cir. 

1984), aff'd, 471 U.S. 359 (1985). Concluding that the district 

court was correct in rejecting this claim, we affirm the judgment

of the district court.

The parents' freedom to place their child in a school

other than the one offered by the school district was never at

issue in this case. What was at issue was the parents' asserted

right to treat the alleged failure of the defendant School

District to satisfy the placement and IEP requirements within

prescribed times as entitling the parents to full reimbursement

for their unilateral, out-of-district placement of the child

without the approval of any hearing officer or court.

-2-

Under 20 U.S.C. 1415(e), a section of the IDEA, the

district court had jurisdiction based on a federal question under

28 U.S.C. 1331, involving an appeal from an administrative

decision of a hearing officer acting for the New Hampshire

Department of Education. In this instance, the district court

assigned the case to Magistrate Judge James R. Muirhead, and the

appeal to this court is under 28 U.S.C. 636(c)(3) and 1st Cir.

Loc. R. 3.1. The final order of March 17, 1997 in the district

court granted summary judgment to the Milford School District. A

timely notice of appeal brought the matter to this Court.

I. Standards of Review I. Standards of Review

A. By the District Court A. By the District Court

We first address appellants' contention that the

district court was required to defer both to the hearing

officer's findings of fact and to her rulings of law, and that

alleged errors require that we reverse and order judgment for

appellants for full reimbursement.

The IDEA provides that upon appeal from a state

administrative officer's decision, the federal district court

shall receive the records of the
administrative proceedings, shall hear
additional evidence at the request of a
party, and, basing its decision on the
preponderance of the evidence, shall
grant such relief as the court determines
is appropriate.

20 U.S.C. 1415(e)(2). In exercising its authority under the

statute, a district court must address the following questions:

-3-

First, has the State complied with the
procedures set forth in the Act?

Second, is the individualized educational
program developed through the Act's
procedures reasonably calculated to
enable the child to receive educational
benefits?

Board of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). 

On appeal from a district court judgment in a case

arising under this statute and these precedents, parents must do

more than show that a defendant school district or a state agency

did not in every respect comply formally with (as phrased in the

first question identified in Rowley) "the procedures set forth in 

the act," including prescribed requirements for placement and for

developing an IEP. The parents must show some default or

deficiency material to outcome. See Lenn v. Portland Sch. Comm., 

998 F.2d 1083, 1088 (1st Cir. 1993).

In this instance, the magistrate judge's introductory

statement of the standard of district court review is consistent

with the statute and Rowley. Order of March 17, 1997 at 8-9. In 

developing their argument that the magistrate judge's reasoned

explanation of his decision failed to consider and "give 'due

deference' to the Administrative Hearing Officer's Findings of

Fact and Rulings of Law," appellants allude from time to time to

testimony of Mrs. F that had not been transcribed. At no point

in the record before us, however, or indeed in oral argument, has

any suggestion been made of deliberate destruction or withholding

of a tape or transcript. In proceedings before the magistrate

judge, each party had the opportunity to call attention to any

-4-

evidence and argument that could raise a genuine dispute of

material fact fatal to the other party's motion for summary

judgment. In these circumstances, the record does not support an

argument that either the district court or this court, in

determining whether a genuine dispute of material fact existed,

should infer that Mrs. F's relevant observations and opinions,

and reasons for them, were not adequately presented in the record

that was before the magistrate judge despite the missing

transcript. The magistrate judge's reasoned explanation of his

decision, in the 25-page ORDER issued, satisfied the terms and

conditions of district court review and deference explained in

Burlington, 736 F.2d at 792 (A federal trial court is "free to 

accept or reject the findings [of the hearing officer] in part or

in whole" as long as it considers and responds to all material

findings).

Appellants' assertion that statutes and precedents

require deference to an administrative hearing officer's rulings

of law is not well founded. Legal rulings are subject to de novo

review, both in the district court and in this court. A district

court reviewing an administrative officer's rulings of law under

the IDEA framework is acting appropriately in disregarding any

rulings about applicable law that are not in conformity with

applicable statutes and precedents. See Abrahamson v. Hershman, 

701 F.2d 223, 231 (1st Cir. 1983). An administrative hearing

officer's rulings of law, even if fully reasoned (and the more so

when stated without an explained basis, as were some of the

-5-

rulings that the district court disregarded in this instance) are

not entitled to deferential review. No deferential review is

appropriate even if the rulings of law concern interpretation of

a state statute or state judicial decisions rather than federal

law.

With respect to a hearing officer's findings of fact,

it is true that a reviewing district court is directed to give

deference to them. Due deference, however, does not require

deference to a finding the cogency of which is impaired by the

hearing officer's dependence on an error of law. A district

court can disregard an administrative officer's findings of fact

whenever the court determines that they are unreliable or

incorrect in light of the totality of the record. See 

Abrahamson, 701 F.2d at 230. In this case, because of the 

officer's errors in applying both federal and state law as the

officer considered the facts (as explained in subsequent parts of

this opinion), the magistrate judge's decision, as a matter of

law on motion for summary judgment, not to defer to the officer's

factual findings was not erroneous as a matter of law and was not

an abuse of discretion.

B. Appellate Review of the Magistrate Judge's Decision B. Appellate Review of the Magistrate Judge's Decision

Appellate review of rulings of law is plenary.

Meghan's parents could receive the full reimbursement

they seek only if, under applicable law, they had the choice by

their unilateral actions, and without the approval of any

administrative official or court, to place Meghan at the Dublin

-6-

School without consent of the Milford School District and at the

Milford School District's expense. See Burlington, 736 F.2d at 

798. In Roland M. v. Concord Sch. Comm., 910 F.2d 983, 999-1000 

(1st Cir. 1990), cert. denied, 499 U.S. 12 (1991), we held that 

an unjustified unilateral placement in a private school does not

give rise to a right to reimbursement unless it is finally

adjudged both that the parents' placement was appropriate and

that an inappropriate IEP, or none at all, had been developed by

the school district. The parents are not completely barred from

reimbursement because they acted unilaterally. But they act

unilaterally at a financial risk that serves as a deterrent to

hasty or ill-considered transfer, and "reimbursement will not be

available to the parents if it turns out that the school system

had proposed and had the capacity to implement an appropriate

IEP." Burlington, 736 F.2d at 798. 

In this case, the district court determined that the

parent's unilateral, out-of-district placement did not satisfy

these requirements because (i) Meghan's IEP was appropriate under

federal and state law, (ii) the Dublin School, as a matter of

law, was not an appropriate placement, and (iii) the school

district offered an alternative appropriate placement at Milford

High. On appeal, the parents must show that the district court,

in determining that Meghan's placement and IEP were appropriate,

made mistakes of law or committed an abuse of discretion in

reaching the decision to allow summary judgment for the Milford

School District.

-7-

II. The Merits II. The Merits

Appellants challenge the IEP, first, on the ground

that, in practical effect, it predetermined that placement for

the 1995-96 school year would necessarily be at the Carroll

School. The hearing officer predicated her conclusion that the

IEP was inappropriate solely on the ground that "the [School]

District predetermined that Meghan would be placed at the Carroll

High School for her Ninth Grade Year (1995/96)." Decision of

Jan. 18, 1996, at 19.

Appellants also challenge the School District's offered

placement of Meghan at either the Carroll School or Milford High

as being inappropriate as a matter of law under the IDEA

framework. 

Finally, appellants challenge the IEP and the

proposed placement on the ground that the district court erred in

determining that, as a matter of historical fact, Milford High

was offered as an alternative for Meghan's placement.

A district court's evaluation of an IEP is ordinarily a

mixed determination of law and fact. The central question posed

for review in this court is whether the district court's

determination that the IEP was appropriate was clearly erroneous

on the record as a whole. Hampton Sch. Dist. v. Dobrowolski, 976 

F.2d 48, 52 (1st Cir. 1992)(citing Roland M.). Implicit in the 

scope of authority of the district court is discretion in

assigning weight to various relevant historical facts.

-8-

We perceive no clear error in the district court's

determination that Meghan's IEP did not "predetermine" her

placement. The district court could have reasonably inferred and

did expressly infer from correspondence, transcripts and other

communications in the record that placement was offered at

Milford High School. See Order of District Court at 15 (citing 

the school district's exhibits nos. 10, 23, 27, 49, 76, and

especially no. 72, which was the transcript of the IEP meeting).

No predetermination at Carroll could have resulted from a process 

in which placement at Milford High School was offered. 

The district court's determination that the school

district offered Milford High as a placement during the July 1995

meetings was one of material historical fact that was not clearly

erroneous. As already noted, the district court relied on and

made express reference to substantial evidence in the record in

making this determination.

Also, the district court's evaluative determination

that the IEP and offered placements fulfilled Meghan's

educational needs resulted from an appropriate consideration of

the evidence in the record. See Order of District Court at 22 

("Based on the record, I conclude that Milford High School could

have provided Meghan with a 'free appropriate public education,'

by conferring her educational benefits in the least restrictive

environment."). The additional transcript of the "due process

hearing" that appellants now ask us to consider contains a

recitation of the same arguments against the IEP's

-9-

appropriateness that appellants have made elsewhere in the

history of proceedings in this case. Appellants do not call

attention to any challenge not considered and rejected, by the

district court, in a decision within the scope of its discretion.

The district court relied on substantial evidence,

including expert testimony, that placement at Milford High for

Meghan would be appropriate for her educational needs. Although

not itemizing and commenting upon all relevant evidence, pro and

con, as appellants argue should be done by a reviewing court, the

district court's reasoning is sufficiently explained to show that

the court recognized its obligation to weigh expert opinions

along with other evidence in reaching its evaluative

determination as to whether the offered placement was

appropriate. The district court's determination that Milford

High would be an appropriate placement for Meghan was not clearly

erroneous. 

We conclude, also, that the district court's decision

that Milford High could have provided Meghan the "free

appropriate public education" (FAPE) required under the IDEA was

not affected by any error of law. The Supreme Court and this

Court have consistently construed the FAPE requirement to mean

that any given placement must guarantee "a reasonable probability

of educational benefits with sufficient supportive services at

public expense." G.D. v. Westmoreland Sch. Dist., 930 F.2d 942, 

948 (1st Cir. 1991)(citing Rowley, 458 U.S. at 187-89). 

Appellants have asserted that Dublin School, as a matter of law,

-10-

was the only appropriate placement. In other cases, we have

expressly rejected the argument that only one placement could

meet the FAPE requirement. "[A] FAPE may not be the only

appropriate choice, or the choice of certain selected experts, or

the child's parents' first choice, or even the best choice." Id. 

In this case, we conclude that the record supports the trial

court's inference that there was a reasonable probability that

Meghan would receive educational benefits and sufficient support

at Milford High. Testimony at the IEP and placement meetings

shows that several administrators and experts agreed on Milford

High's appropriateness and some personally supported the

maximization of Meghan's mainstreaming opportunities there. 

We further conclude that the district court made no

error of law in determining that Milford High met the "least

restrictive environment" requirement under state and federal law.

Federal and state regulations under the IDEA, see 20 

U.S.C. 1412 (5)(B); 20 U.S.C. 1414(a)(1)(C)(iv), prescribe

that all authorized decisionmakers (school district officials,

administrative officers and trial court judges) charged with

evaluating IEPs and placements must subject their determinations

to a check for conformity with the LRE requirement. 34 C.F.R.

300.550; N.H. Code Admin. R. Ann. Ed. 1115.02. Under the

federal regulations, the LRE means:

(1) That to the maximum extent 
appropriate, children with disabilities, 
including children in public or private
institutions or other care facilities,
are educated with children who are non- 
disabled; and 

-11-

(2) That special classes, separate 
schooling or other removal . . . occurs 
only when . . . education in regular 
classes with the use of supplementary
aids and services cannot be achieved 
satisfactorily. 

34 C.F.R. 300.550(b)(1)-(2) (emphasis added). The school

district, normally in cooperation with the parents and experts,

proposes placement from a continuum of alternative placements.

34 C.F.R. 300.551. The term "mainstreaming" refers to the

movement along a continuum from more restrictive or special to

less restrictive or regular placements.

The district court did not err in concluding that, as a

matter of law, the relevant federal and state administrative

prescriptions require that placement be made in the local public

school whenever the circumstances warrant a discretionary choice

among otherwise appropriate in-district and out-of-district

placements. 34 C.F.R. 300.552(c); N.H. Code Admin. R. Ann. Ed.

1115.05(b) ("Unless the educationally handicapped student's

individualized education program requires some other

arrangements, the student shall be educated in the school which

he/she would attend if not handicapped."). Under these

guidelines, even if it be assumed that the Dublin School was

otherwise appropriate, appellants would be entitled to

reimbursement only if the Milford School District did not offer

an appropriate placement at the local public school, Milford

High.

The parents contend that Meghan should have been placed

at the Dublin School because it was the only appropriate

-12-

placement, once the requirement of mainstreaming into an LRE is

taken into account. This proposition, however, rests on an

erroneous interpretation of law regarding mainstreaming.

Placements are not "made by mechanically choosing the least

restrictive environment." See Abrahamson, 701 F.2d at 230. Nor 

does the need to preserve the cooperative procedures among the

relevant participants support appellants' position. The

guidelines for a placement decision in New Hampshire law as in

federal law provide for involving many interested persons and a

wide variety of factors in the choice among alternative potential

placements, and the law does not specify that any one factor or

any one person's opinion must be given decisive weight. See N.H. 

Code Admin. R. Ann. Ed. 1115.02-1115.05.

The LRE requirement does not support a course of action

in which parents who believe that their chid should attend a

particular private school are entitled to be reimbursed by the

school district just because that private school is less

restrictive. Even if the private school was less restrictive,

it would still have to be a placement deemed appropriate by an

authorized decisionmaker in terms of educational benefit. See 

Roland M., 910 F.2d at 993 ("To determine a particular child's 

place on this continuum, the desirability of mainstreaming must

be weighed in concert with the Act's mandate for educational

improvement. [Placement] requires a balancing of the marginal

benefits to be gained or lost on both sides of the maximum

benefit/least restrictive fulcrum."). In this case, when the

-13-

required balancing is taken into account, the evidence of record

supports the district court's decision that the Milford High

placement strikes a permissible balance.

The judgment of the district court is AFFIRMED, with

costs to appellee.

-14-