Michael M. v. Plymouth School        CV-01-469-M    04/12/04
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Michael M., by and through his
parents and next friends, M.D. and M.A.,
      Plaintiff

      v.                                  Civil No. 01-469-M
                                          Opinion No. 2004 DNH 064
Plymouth School District,
      Defendant


                        **O R D E R**


      This is one of three federal cases in which Michael M., by

his parents, appeals an educational hearing officer's decision in

favor of the local school district.  See 20 U.S.C. § 1415(i)(2).

See also Michael M. v. Pemi-Baker Regional Sch. Dist., No. 04-

124-SM (D.N.H.); Michael M. v. Pemi-Baker Regional Sch. Dist.,

No. 02-541-SM (D.N.H.).  Currently before the court are the

parties' respective decision memoranda and statements of material

facts.  Neither party requested a hearing to present oral

argument or additional evidence, nor has either party sought to

supplement its written submissions.  See Order dated January 14,

2003 (document no. 37) (affording the parties the opportunity to

amend and/or supplement their filings).  The matter is, then,

ready for resolution.

## Background

Michael M. was born on June 8, 1987, and at all times relevant to this proceeding was a student in the Plymouth School District. He is exceptionally bright (at least one series of testing indicates that he has an I.Q. in the 140 range) and nearly all of his grades appear to be A's and B's. He plans to attend college and has expressed interest in becoming a lawyer - goals that at least one of his examining doctors (Dr. Sarah Brophy) considers well within his reach. And, he recently applied for, and was granted, admission into two private preparatory schools - New Hampton School and Holderness School. He does, however, have learning disabilities. Specifically, he has been diagnosed with attention deficit and hyperactivity disorder ("ADHD"), which resulted in a coding of "Other Health Impaired." He also has difficulty with penmanship, because of poor fine motor skills, and deficits in expressing his ideas in written form, resulting in a coding of "Learning Disabled." Because of his disabilities, he has been receiving special educational services from the School District for several years.

In August of 2000, Michael was evaluated by Albert Whetstone, Ph.D.  Over the course of nearly three hours, Dr. Whetstone administered a number of tests.  Overall, Michael performed extremely well in nearly all areas.  He did, however, test below average in areas involving "contextual conventions" and "sentence combining."  Dr. Whetstone summarized Michael's weaknesses as follows:

> Assessed at a one year lag in spelling[,] although his skills were compromised in part by his difficulty with fine-motor control of his pencil[,] and in part by his hurried style of writing.  Mike tended to write longer words correctly and to leave off the endings of shorter words!
>
> Compromised in his ability to express his creative ideas using conventional grammar and punctuation, e.g., capitalization, questions marks, quotation marks, paragraph organization.

Confidential Educational Evaluation of Michael at 4.  An evaluation performed by Sarah Brophy, Ph.D., in May of 2001, yielded similar conclusions.

In June of 2001, Michael's parents made three separate requests for due process hearings.  One of the issues they raised - a demand that the School District switch Michael's primary and

3

secondary codes - was resolved by the School District almost immediately, at the first pre-hearing conference. The remaining two requests for due process hearings (which involved challenges to Michael's IEP and his placement in Plymouth High School, rather than either of two private preparatory schools to which he had been admitted) were addressed at a single administrative due process hearing. Over the course of three days, the parties presented evidence to a hearing officer, with the School District calling ten witnesses, and Michael's parents calling two witnesses (Dr. Brophy and Michael's mother).

### Legal Framework and Judicial Standard of Review

Congress enacted the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). Under the scheme established by the IDEA, and in return for federal funding, state educational agencies establish procedures to identify and evaluate disabled students in need of

4

special education services.  See 20 U.S.C. § 1412.  For each identified child, a team comprised of the child's parents, teachers, and a representative of the educational agency develops an individualized education plan ("IEP") for the child.

An IEP consists of "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d) of [the IDEA]."  20 U.S.C. § 1401(11).  It must be "reasonably calculated to enable the child to receive educational benefits,"  Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982), and "custom tailored to address the [disabled] child's 'unique needs,'"  Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993) (citing 20 U.S.C. § 1400(c)).

Importantly, however, neither the IDEA nor New Hampshire law requires the IEP to "maximize" a child's educational benefits.  See, e.g., Lenn, 998 F.2d at 1086 (holding that federal law does not require that "the benefit conferred [by the IEP] reach the highest attainable level or even the level needed to maximize the child's potential.").  Instead, the IDEA imposes on states and local school districts an obligation to provide a program that is

5

"sufficient to confer some educational benefit upon the handicapped child."  Rowley, 458 U.S. at 200.

> We therefore conclude that the "basic floor of opportunity" provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child.

Id. at 201.

If a parent believes that a proposed IEP will not provide an appropriate education, or that the procedures established by the IDEA have not been properly followed in developing the IEP, he or she may request an administrative due process hearing to review the matter.  See 20 U.S.C. § 1415(f).  If a parent or the affected school district is dissatisfied with the administrative hearing officer's ruling, that party may seek judicial review in either state or federal court.  20 U.S.C. § 1415(i)(2).

The district court's review of state educational administrative proceedings has been described as "one of involved oversight."  Lenn, 998 F.2d at 1087 (citing Roland M. v. Concord Sch. Comm., 910 F.2d 983, 989 (1st Cir. 1990)).  The applicable

standard is an intermediate one under which the district court must exercise independent judgment, but, at the same time, accord "due weight" to the administrative proceedings.

> The required perscrutation must, at one and the same time, be thorough yet deferential, recognizing the expertise of the administrative agency, considering the agency's findings carefully and endeavoring to respond to the hearing officer's resolution of each material issue. Jurists are not trained, practicing educators. Thus, the statutory scheme binds trial courts to give 'due weight' to the state agency's decision in order to prevent judges from imposing their view of preferable educational methods upon the States.

Roland M., 910 F.2d at 989 (citations and internal punctuation omitted). See also T.B. v. Warwick Sch. Comm., 361 F.3d 80, 83-84 (1st Cir. 2004).

District court review is focused on two questions: (1) whether the parties complied with the procedural requirements of the IDEA; and (2) whether the IEP developed through those procedures was reasonably calculated to enable the disabled child to receive educational benefits. See, e.g., Rowley, 458 U.S. at 206-07. The burden of proof rests with the party challenging the administrative decision - here, Michael and his parents. See

7

Hampton Sch. Dist. v. Dobrowolski, 976 F.2d 48, 54 (1st Cir. 1992); Roland M., 910 F.2d at 991.

**Discussion**

In their complaint, Michael and his parents challenge the hearing officer's decision on fourteen separate grounds. Complaint (document no. 1) at paras. 8 and 9(A)-9(M). Those challenges fall into three categories: substantive challenges; technical/procedural challenges; and challenges to the weight of the evidence. In their decision memorandum (document no. 20), plaintiffs combine their substantive challenges to the hearing officer's decision with their arguments concerning the weight he ascribed to the testimony of various witnesses. Accordingly, the court will do the same.

I.   Technical/Procedural Challenges.

At the due process hearing, plaintiffs accused the School District of 71 discrete procedural violations. After hearing testimony from plaintiffs' two witnesses (neither of whom testified as to any adverse impact upon Michael's IEP caused by the alleged procedural violations), the hearing officer ruled in

8

favor of the School District.  Here, plaintiffs assert that the hearing officer erred by ruling that two documents they submitted on the subject of the School District's alleged procedural violations (an objection and an affidavit) were not signed under oath.  Complaint, paras. 9(D) and 9(E).  Those claims can be quickly dispatched.

First, while the hearing officer concluded that the documents submitted by plaintiffs were not properly signed under oath, he did consider them as argument.  Moreover, plaintiffs have failed to point to any evidence suggesting that they were prejudiced in the slightest by the alleged errors, nor have plaintiffs shown that those alleged errors adversely affected the hearing officer's ultimate decision.  Finally, and perhaps most importantly, plaintiffs have failed to demonstrate that any of the 71 procedural errors they identified at the due process hearing (and as to which the hearing officer ruled in favor of the School District) "compromised [Michael's] right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits."  Roland M., 910 F.2d at

9

994. Consequently, the alleged errors identified by plaintiffs, even if real, cannot support granting the relief they seek.

II. Substantive Challenges.

On a more substantive level, plaintiffs raise the following five challenges to the hearing officer's decision:

1.  The hearing officer erred when he ruled that the School District was not required to seek a due process hearing when Michael's father, acting on behalf of Michael, refused special education services in 1998, 1999, 2000 (opting, instead, to address Michael's special needs through a Section 504 plan). Complaint, para. 9(A).

2.  The hearing officer erred when he ruled that the School District provided a free appropriate education for Michael during the years 1998, 1999, 2000, and 2001. Complaint, para. 9(G).

3.  The hearing officer erred when he ruled that the School District provided Michael with an appropriate educational placement for 2001-2002. Complaint, para. 9(C).

4.  The hearing officer erred when he ruled that Michael made adequate educational progress. Complaint, para. 9(B).

> 5. The Hearing Officer erred when he concluded
> that the School District was the "prevailing
> party." See Complaint, para. 8.[1]

None of those challenges is sufficiently supported by the record to warrant reversing (in whole or in part) the decision of the hearing officer.

As to plaintiffs' assertion that the School District should have challenged their own parental decision to refuse special services for Michael for the years 1998 through 2000 (by seeking a due process hearing), the hearing officer's adverse ruling is well supported. In short, the record reveals that Michael's parents made that decision knowingly and intelligently. As the hearing officer pointed out, it is difficult to conclude otherwise, given the extensive understanding of the process possessed by Michael's mother (a certified special educator formerly employed by the School District to oversee compliance with state and federal special education laws), as well as Michael's academic progress during those years under the 504 plans provided to him (as revealed by his overall progress on

---

[1] That plaintiffs challenge the hearing officer's determination that they were not the "prevailing party" is also implicit in their requests for attorney's fees.

11

standardized testing, as well as the fact that he succeed in achieving the necessary skills to graduate from grade to grade in each of those years). As the hearing officer concluded:

> The facts of this case indicate that the District has acted reasonably in following its obligations to Parents and Student in not requesting a hearing on the refusal of services. This is because the facts reasonably show Student capable of and ma[k]ing educational progress from 1998 to 2001. The effort to restart special education services after Father's request in the spring, 2001, was also reasonable. It would be a different case if Mother were not a special educator and Student's difficulties more pervasive. On the facts of this case, the decision not to appeal Parents' refusal of special education services is not an issue.

Hearing Officer's Decision at 23.

Next, plaintiffs say that the hearing officer erred in concluding that the School District provided Michael with a free appropriate education from 1998 through 2001. Again, however, their claim is not supported by the record. Michael's test scores reveal that, overall, he made academic progress during those years. And, as noted above, he successfully mastered the academic skills necessary to progress from grade to grade. While he may not have reached the high level of performance that his

12

parents expected, the School District is not required to provide special education services designed to maximize Michael's potential. Rather, it must deliver services that provide an educational benefit. As the court of appeals for this circuit has observed:

> Since _Rowley's_ construction of the EHA, a [free appropriate public education or "FAPE"] has been defined as one guaranteeing a reasonable probability of educational benefits with sufficient supportive services at public expense. Following _Rowley_, courts have concluded that a FAPE may not be the _only_ appropriate choice, or the choice of certain selected experts, or the child's parents' _first_ choice, or even the _best_ choice. Barring higher state standards for the handicapped, a FAPE is simply one which fulfills the minimum federal statutory requirements.

_G.D. v. Westmoreland Sch. Dist._, 930 F.2d 942, 948-49 (1st Cir. 1991) (emphasis in original). _See also_ _T.B. v. Warwick Sch. Comm._, 361 F.3d at 83 ("IDEA does not require a public school to provide what is best for a special needs child, only that it provide an IEP that is reasonably calculated to provide an appropriate education as defined in federal and state law.") (citation and internal punctuation omitted); _Walczak v. Florida Union Free Sch. Dist._, 142 F.3d 119, 132 (2d Cir. 1998) ("IDEA does not require states to develop IEPs that maximize the

potential of handicapped children.  What the statute guarantees is an 'appropriate' education, not one that provides everything that might be thought desirable by loving parents.") (citations and internal quotation marks omitted).  During the years in question, the School District fully met its legal obligations to Michael and provided him with a free appropriate public education.

Plaintiffs' assertion that the hearing officer erred in concluding that the School District provided Michael with an appropriate educational placement for the 2001-2002 school year is also insufficiently supported by the record to warrant disturbing the hearing officer's decision.  While Michael's mother expressed a preference for placing him at Holderness School (which she acknowledged lacks any special education teachers), plaintiffs failed to demonstrate that the hearing officer erred in concluding that the placement recommended by the School District was appropriate.  Similarly, the hearing officer's conclusion that Michael made adequate educational progress is fully supported by the record.  Plaintiffs have failed to demonstrate otherwise.

14

Finally, as to their claim that the hearing officer erred when he concluded that the School District was the prevailing party, plaintiffs have failed to carry their burden of proof. In support of their position, plaintiffs say: (1) they "prevailed" in having the School District switch Michael's primary and secondary coding; and (2) the final IEP which was found appropriate by the hearing officer actually incorporated many of the changes requested by plaintiffs.

To properly be viewed as the "prevailing party," plaintiffs must demonstrate that there has been some judicially sanctioned material "alteration in the legal relationship of the parties." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001). See also Doe v. Boston Public Schs, 358 F.3d 20 (1st Cir. 2004) (applying the Buckhannon prevailing party analysis in the context of a request for attorney's fees under the IDEA). As explained in Buckhannon, only "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." Id at 604.

15

In this case, neither of the two issues as to which plaintiffs claim prevailing party status was resolved by a judgment on the merits or a court-ordered consent decree. Instead, plaintiff's "prevailed" on those issues only because, prior to the due process hearing that they requested, the School District voluntarily agreed to adopt some of the changes plaintiffs proposed with regard to Michael's coding and IEP.

As to the coding issue, the fact that the School District agreed to switch Michael's primary and secondary coding (i.e., consider his secondary code his primary code, and vice versa) did not result in any meaningful modification of his IEP. The School District had, all along, acknowledged Michael's disabilities and designed an appropriate program to ensure that he received educational benefits. That the School District cooperatively acquiesced to plaintiffs' inconsequential request that Michael's codes be switched (which had no substantive effect on Michael's IEP) does not, standing alone, vest plaintiffs with prevailing party status. See generally J.W. v. Contoocook Valley Sch. Dist., 154 F. Supp. 2d 217, 227-29 (D.N.H. 2001).

16

With regard to their claim that they were the prevailing party because the School District agreed to incorporate some of their recommendations into Michael's IEP, plaintiffs are mistaken. Prior to their request for a due process hearing, plaintiffs had not provided the School District with any suggested modifications to Michael's IEP; instead, they simply challenged the IEP proposed by the School District. Accordingly, at the first pre-hearing conference, the hearing officer asked them to submit a proposed IEP, with changes they believed were appropriate. They did so and the School District accepted some of those proposals and incorporated them into the final IEP. Importantly, however, there is no indication that, had plaintiffs submitted those proposed changes to the School District before seeking a due process hearing, they would have been rejected. Instead, the record reveals that the School District gave due consideration to plaintiffs' proposals and incorporated those which it deemed appropriate - without the need for judicial intervention. Under those circumstances, plaintiffs cannot be deemed the "prevailing party" for attorney's fee purposes, as that phrase has been defined by the Supreme Court and applied by the court of appeals for this circuit. Cf. Kathleen H. v. Mass.

17

<u>Dep't of Educ.</u>, 154 F.3d 8, 15 (1st Cir. 1998) ("Even where a defendant makes some changes following administrative proceedings that comport with a plaintiff's demands, if the actions are taken unilaterally by the defendant and there is no indication that they would not have transpired had the plaintiff not pursued the administrative process, the plaintiff cannot qualify as a 'prevailing party' for fee-shifting purposes.") (quoting <u>Payne v. Bd. of Ed.</u>, 88 F.3d 392, 400 (6th Cir. 1996)).

Parenthetically, the goals of the IDEA would not be advanced if, when presented with a school district's proposed IEP, parents were free to simply remain silent, seek to resolve any disagreements that they have in the context of a due process hearing, and then claim prevailing party status (and obtain an award of attorney's fees) as to issues that easily could have been resolved quickly and informally by making their concerns known to the school district. In this case, plaintiffs might have had a more compelling argument if they had notified the School District of their proposed changes to Michael's IEP prior to seeking a due process hearing <u>and</u> if the School District had rejected those proposals, thereby compelling plaintiffs to seek

18

administrative review.  That, however, did not occur and, under the circumstances presented, plaintiffs are not entitled to an award of attorney's fees.

## Conclusion

Although their relationship with the School District appears to have been unnecessarily confrontational, Michael's parents cannot be faulted for seeking the maximum level of educational services available for their son, in what they perceive to be the best available environment.  Nor, however, can the School District be faulted for the level of services that it has provided to Michael over the years (through both its section 504 programs and Michael's IEPs).  And, of course, parents must assume responsibility at home for making certain that their children make educational progress by, for example, ensuring that homework is done on time, that participation in extra-curricular activities does not interfere with or compromise academic work, etc.

While some might argue that the services that the School District provides to Michael are not sufficient to maximize his

19

educational potential, neither the IDEA nor New Hampshire law requires the School District to provide an "optimal" educational environment. Rather, the School District is obligated to offer Michael a learning environment and educational plan that provides demonstrable "educational benefit." Under the facts presented in this case, the School District has certainly met its legal obligations to Michael.

Although Michael's parents obviously disagree, having expressed a preference for placing Michael in Waterville Valley Academy (a ski school that provides students with tutoring on academic subjects) or, more recently, the New Hampton School or Holderness, the School District is not required to fund Michael's placement in a private school. Michael's parents are, obviously, free to enroll him in a private school but, because the School District has demonstrated that Michael has made adequate educational progress during the years in question and that his special needs can be appropriately addressed through his current IEP and placement, it need not bear the substantial additional expense associated with a private preparatory school education.

20

Plaintiffs have failed to carry their burden of proof with regard to any of the alleged deficiencies they have identified in the hearing officer's decision.  Accordingly, the decision of the hearing officer, dated August 20, 2001, is affirmed.  The School District's Motion to Strike Parents' Reply Memorandum (document no. 24) is denied.  Each party shall bear its own costs and expenses.  The Clerk of Court shall enter judgment in favor of the School District and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 12, 2004

cc:  Diane M. Gorrow, Esq.
     Margaret A. Maroni
     Michael D. Maroni

21